Good morning, Your Honors, and may it please the Court, I'm Matt Blickenstufer on behalf of the Hilltop Companies. Judge Cook, I would like to reserve three minutes for rebuttal. You may. Thank you. Your Honors, an obligation to arbitrate claims is presumed to survive the termination of an agreement containing an arbitration clause. The presumption can be overcome only if it is negated expressly or by clear implication. The agreements at issue here do not expressly negate that presumption. So the question before the Court is whether they negate it by clear implication. The answer to that question, Your Honors, is no, they do not. The absence of the arbitration clause from a separate clause on survival of obligations is not a clear implication negating the obligation to arbitrate claims that are brought post-trial. You would concede it is an implication? I would concede that it's a reasonable construction of the agreement, Judge Gilman, and that it is an implication because the way the District Court got there was through a traditional canon of construction, expressio venus. I will concede that. It is not a clear implication for these reasons, Your Honor. First, the background is this presumption. And that could lead parties to write agreements that did not include arbitration clauses in survival agreements because they don't need to, given the legal backdrop. There was no need for the drafters of this agreement to include the arbitration clause in a survival clause when that is the legal presumption that exists anyway. Second, the language of the arbitration clause itself is broad, all-encompassing, and suggests no temporal limitation whatsoever on when claims might be brought but not be subject to the arbitration clause. Third, the District Courts and the plaintiff's reasoning, as I just mentioned, depends on a canon of construction that relies on a negative inference, which is a very weak inference, Your Honors. It's used in the face of ambiguous evidence, in the face of potentially unclear language. And so by definition, the resort to that canon of construction indicates there is not a clear implication here. Your client's the one who drafted this agreement. That is correct, Your Honor. There's another canon of doctrine, right? The, what, contra profferendum? It's construing ambiguity against the drafter. And your client's the drafter. Our client is the drafter. Now, why would it not have included paragraph, what, 21, which is the arbitration clause, and the survival clause, which is the very next paragraph? Well, I certainly agree with you, Judge Gilman, that this would have been clearer had it been included. We wouldn't be here today. We would not. Well, we might still be here today, but. Not on this issue, though. But I might be sitting at the other table in that instance. Do you have before us the drafter, your client? Are you the drafter of this document for your client? Oh, I am not, Judge Cook. That's good to hear. Yeah, I am not, and if I were, I would have to plead that that would be extrinsic evidence here that I could not report to the court. I assume that's the case. No, I am neither the drafter nor the trial lawyer in this particular case, Judge Cook. But, Judge Gilman, to answer your question about construing against the drafter, that's not typically how arbitration agreements get construed. Because, of course, arbitration agreements are construed by resolving all doubts in favor of arbitration when there is an arbitration clause. So, that overriding rule applies here. And I don't think the contra preferential rule is generally applied to arbitration clauses, given the Supreme Court's clear guidance that any doubts about the scope. Again, this is almost like a landlord-tenant lease agreement. I mean, hey, these people who are the contract, whether they're employees or independent contractors, of course, the underlying merits issue under the Fair Labor Standards Act. But, I mean, I gather they either signed it or took it or leave it, right? You didn't really negotiate this contract with them. Well, there's, I don't believe there's any evidence in the record one way or the other about that, Your Honor. Okay. But, I mean, your party, they're the ones who presented this contract to these people, and they signed it. Yeah, I, I, I. Same contract for everybody. It is the same, it is, it is the same contract for, I mean. Pretty clear indication they didn't need to negotiate. It is. The same one, and it happened to turn out identical. Yeah, that's right, Judge McKee. I mean, there, there are, I believe, some minor differences in them. But, you know, the record doesn't indicate, but, you know, we can probably presume that, yes, it was drafted by Hilltop, and that it was the same contract that was presented to them. So we're trying to interpret what was the intent of the parties here, and did they intend for the arbitration clause to survive termination of the contract or not? I, I think a reasonable person reading this arbitration clause, Judge Gilman, which is all-encompassing and suggests no temporal limitation whatsoever, would conclude that it applied both to any dispute that was brought during the term of the contract as well as after the term. What would happen if, out of these 24 clauses, the, that they had incorporated 23 of them in the survivability clause and not the arbitration clause? Would that yield a different result, do you think, or not? Well, I, I think it, I think I would argue for the same result, Judge McKeague, because of the background presumption that the arbitration clause still requires arbitration after the termination or other ending of the contract. I, you know... Well, at some point, it would be a clear implication if, under Judge McKeague's hypothetical, wouldn't it, if 23 of the 24 clauses were listed as surviving and the arbitration clause was the only one left out? Well, I, I don't, I don't think I agree with that, Judge Gillman, for this reason. The background legal presumption has to be taken into account when considering whether there is a clear implication or not. I mean, drafters... How could there not be a clear implication under that hypothetical? I'm sorry, Judge... Well, when would it ever be a clear implication? Well, if, for instance, OK, I've thought about this question a lot, because it's a good question, and I think one... Can I get a gold star for asking that? No, because it was my question. Oh, darn! OK. Award the star here. One way you could have a clear implication is if the survival clause said only these provisions survive. That would not expressly state that the arbitration clause did not survive. Well, that's pretty express, isn't it? Well, as I... To me, expressly stating that the arbitration clause does not survive would mean that there has to be some provision that says arbitration clause is limited to this period of time or arbitration clause does not survive the termination of the agreement. So only express could trump the presumption? No. No, the Supreme Court clearly... Because this is supposed to express. Well, I think it's an implication from that, because the background... The background default rule is it survives termination of the agreement. 24 out of 24 would be more clear, but not clear enough, as you would argue, in terms of this presumption. So realistically, you'd have to say in the agreement that arbitration does not survive. I think if the survival clause said only these clauses survived, the survival clause does not say that. That's just the converse, I suppose. It is, but I still think it's an implication, Your Honour, not express language that it doesn't survive. Given that this is a case of first impression, at least... Can you cite any circuit case, any circuit-level case that holds that an arbitration clause survives not being listed in the survival clause? I cannot cite a circuit case one way or the other on this, Judge Gilman. I believe it is an issue of first impression in the circuit courts. We did cite the three district court decisions going our way, two going against us, literally going against us. The only two that we know going the other way are this district court decision and a case also filed against the Hilltop Companies in the Eastern District of Virginia, which relied on Judge Spiegel's decision. The three district court cases prior to that went our way, saying that the failure to include the arbitration clause in the survival clause is not a clear enough implication given the presumption in favor of resolving doubts in favor of arbitrability. So I can't find... We couldn't find a circuit court case, Judge Gilman. There are certainly circuit court decisions that point in a specific direction, and one of them is this court's decision that we cited in Zucker against After Six. In that case, this court held an unreported decision but talked about these presumptions and in a particular context of that decision held that that particular dispute did not involve facts that arose during the course of the contractual relationship and therefore that dispute, that particular dispute was... Was this resolved on summary judgment or was it resolved on just pleadings? This was just on the pleadings. This was a motion to dismiss based on arbitration. There's no deposition or anything as to why your client left the arbitration? No, there's no deposition, there's no affidavit, there's nothing of the sort. It was done on the pleadings, Your Honor, and on the other side of the coin, there's no evidence on the other side either to indicate the understanding or anything of that sort from the plaintiff's perspective. So, Your Honor, in my remaining time, I would like to get to another point unless there are further questions from the panel on what the district court decided, and that is if the court agrees with the Hilltop Companies on the survivability issue, we would encourage the court to go ahead and reach the remaining issues of arbitrability that have been discussed, even though they were not addressed by the district court. You're both in agreement on that one, right? Well, they've both been... I don't know if my adversary would agree, Judge McKeague, but we were fully briefed. I thought he conceded that this Reed case controlled. Oh, I think I'm making a slightly different point from that one, Judge McKeague, which is rather than remanding on these other issues to the district court, I'm encouraging this court to go ahead and reach them if I get past the first hurdle. It is true that on two of the three other arbitrability issues that were raised at the district court, the Reed-Elsevier case clearly controls, and that has been conceded by the other side. The remaining issue of arbitrability that was raised that's not controlled by Reed-Elsevier but is controlled by another decision of this court is the requirement for a clear and unmistakable waiver of a jury trial in these cases, and that issue is controlled by this decision in Cooper against MRM Investment Company where this court clearly held that a clear and unmistakable waiver requirement does not exist for bilateral arbitration agreements as opposed to collective bargaining agreements. So we think that if we get past the survivability hurdle, the remaining issues are purely legal, they've been fully briefed, they don't need a factual record, and they're easily disposed of by this court's prior precedents. Thank you, Your Honors. Good morning, Your Honors. My name is Adam Hanson. I represent the appellees, a group of approximately 30 workers in this case. The question presented here is whether the appellees must be forced to arbitrate their claims on an individual basis where the language of the contract simply doesn't require it, and I think it's important, very briefly, to situate this question in the context of the legal predicates. We have to remember that once upon a time it was a controversial proposition. Well, the contract required it. That's not the point, is it? The contract does have an arbitration clause. Yes, the contract has an arbitration clause. I guess the broader point being whether these claims under the Fair Labor Standards Act and the Ohio Wage and Hour Law are arbitrable after the termination of the contract. To my prior point, it is established under the law that statutory claims can be submitted to arbitration. The Supreme Court has said that. This Court has said that the Fair Labor Standards Act claims can be submitted to arbitration. But what we're talking about here is really extending those two concepts, both of which were fairly controversial in their time to say not only can we arbitrate these statutory claims, not only can we arbitrate claims under the Fair Labor Standards Act that have a significant public interest component outside the parties of a given case, but we can do it with a contract that, if you pass it around the Thanksgiving table, I suspect most people would say, boy, I wouldn't read this contract in such a way as to require arbitration in this case. And I can tell you candidly that my clients in this case were surprised and would be surprised if ultimately this is enforced based on what they thought they were getting into when they signed these things, when they were put in front of them. The people around my Thanksgiving table, of course, don't know anything about the presumption of arbitrability or the Federal Act or this basically clear statement rule either, so I'm not sure where that takes us. Well, Judge McKeague, you obviously have so many attorneys in your house. You have a more sophisticated Thanksgiving group than we do. There are too many attorneys in my family, so perhaps I should join you at Thanksgiving next year. But the point is well taken. You still have an invitation. Didn't expect that. I think that goes right to the heart of the matter, which is that there's no disagreement about the standard here. That's the standard that's articulated in the Litton case that Hilltop was discussing. There's no dispute that there's no express provision of this contract that would indicate that the arbitration clause would not survive the expiration of the contract. So what we're talking about is whether there is a clear implication here. And the district court, I think, got it right in finding that there is a clear implication here. Actually, isn't your duty today to tell us that you meet the standard of a forceful, there has to be forceful evidence of purpose to exclude the claim from arbitration? I mean, that's the way it works, you know, the pendulum back and forth. It works that you need forceful evidence of a purpose to exclude. Well, respectfully, I don't have any evidence. This is not a motion to dismiss. Right. But I mean contractually. It's as a matter of somewhere in this contract, there'd be some force. Typically, it's in the absence of express, an express purpose to exclude, then you need some other evidence to establish it from the contract. Right. And I think that evidence is present here within the four corners of the contract. Certainly, there could be some extrinsic evidence that is what would not be. No, but we're looking for what you say the contract says that would support your view. Right. And I think what the contract says is there are numerous provisions that clearly survive the expiration of the contract. In fact, basically every other substantive provision besides the arbitration clause survives this contract. There are confidentiality provisions that these workers have to maintain, often to infinity, about the work that they did here. Part of the compensation structure under the terms of the contract, the ownership of materials, compliance, warranties, procedures related to termination, non-exclusivity, consideration. There's a choice of law provision. There's a non-compete. It doesn't go so far to say that it's not 23 out of 24, as the hypothetical suggested, but it's literally all other substantive provisions of this contract. Well, it's both substantive and procedural. It's sort of a hodgepodge. In fact, what's interesting is I noticed that the integration clause and the severability clause are not listed as surviving. But that strikes me as, well, that's sort of illogical. I mean, let's take the severability integration clause, which generally says, hey, this is the entire contract. You can't introduce any extrinsic evidence. Well, why would the parties logically say, well, that rule applies as long as the contract's in existence. But, hey, once the contract's over, if there's a dispute, now you can bring in extrinsic evidence. That doesn't make any sense to me, does it? It doesn't make a whole lot of sense to me either, but it's probably a question best directed to the other side.  presented to these employees. So certainly there are. It's not 23 out of 24, but there are. Fifty-fifty? It's probably 60-40, but I don't think it's a numbers game. I think it's a question of looking at each provision in its own right. Let's assume it's sloppy draftsmanship. Does that mean that you win and arbitration doesn't survive? Or is sloppy draftsmanship, well, it is sloppy, but there's still the presumption of arbitrability trumps? It may be sloppy draftsmanship, and whether or not it's sloppy draftsmanship or some sort of more intentional draftsmanship on the part of Hilltop that's not in the record, I think the result here is the same. The result here is a presumption, and you have to convince us that it's not. It's a presumption of arbitrability. There's a presumption of arbitrability, but the presumption of arbitrability falls away when you are discussing whether there's a valid arbitration agreement at all, whether that covers the claims here. So it is not enough to simply lean on the presumption of arbitrability to have courts rewrite what otherwise may be a sloppy contract to overcome really what the intent of the parties are. If I could address the second point related to whether there is a clear and unmistakable waiver here. Before you leave that, I just want to make sure I understand the point you're making when you say the subject of arbitration. Typically we look at the nature of the dispute for that, and this is one where during the term of the contract there's no question that your clients were required to arbitrate anything relating to their terms and conditions of employment, which would include overtime, right? I think as to the expiration point, that is true. So your argument has to be that after the contract is terminated, then this is not a proper subject of arbitration. That is correct. Did you frame the case that way? Yes. Okay. Very briefly on the second and third point, there's a second problem with the language in this arbitration clause, and that is even assuming that it would somehow apply after the termination of this contract, it's very unclear that rights to a jury trial under the Fair Labor Standards Act and under Ohio Age and Hour Law are being waived here. There's simply no mention of losing a jury. There's no mention of losing a court trial or a right to bring a case in federal court. There's no mention of waiving claims under the FLSA. And these are very serious rights, the right to a jury trial, that we're talking about abrogating in this case. And the case law from this circuit has demonstrated that you need something more than just a very general arbitration clause to get you there, at least when you're talking about something like the Fair Labor Standards Act that is more than just a purely contractual dispute between the parties. We don't characterize it as general or whatever the converse of that is. We characterize it, don't we, as to whether there's a broad arbitration clause. So basically, am I right about that? Yes, that is correct. So if I'm right about that, then you would basically be saying that a broad arbitration clause, which has a certain legal significance, could never include statutory rights that include a jury trial. In other words, in order to encompass every single statutory claim that somebody might be able to bring, you would have to specifically state that in the arbitration clause, because otherwise you'd say, no, it's not included because it's not clear enough they're abrogating a right to a jury trial. Just to make sure I'm with you, as a definitional matter, if you're talking about a broad and also vanilla arbitration clause, it simply says all claims arising under and related to are arbitrable. That's correct. I believe this court's case law stands for the proposition that you need something more in order to waive a statutory claim, waive a jury trial. I've cited cases in the brief that one that's upheld an arbitration clause, one that's rejected it, and you can see the difference in the language right there. I mean, the one has very bold language, clear language, that a layperson or an attorney could understand saying, you are giving up your right to a jury trial. And we believe that's what's been lacking here. Do you agree with your brother counsel that the court should engage the balance of the issues with respect to arbitrability? Yes. So to the two separate points that the court was discussing with my opposing counsel, I do agree that the record is clear enough for this court to address those issues. I further agree that there's not a whole lot for this court to address on the balance of those issues because it is controlled by judge Keflavik. You agree with that? Yes, I do, in Reed Elsevier. I would lobby this panel for 30 seconds. You're the wrong team to lobby. I mean, that's not at bar today, that Reed Elsevier is wrong. You argue that here to an en banc court. No, I'm not arguing. I was not about to make that point. Okay. I was simply saying that, you know, if that comes before the en banc court, I think it's worth taking a look at. Those are very important issues that are open under the Supreme Court precedent right now, and most courts are coming out the other way on that issue. But I'll leave it at that. Unless the court has further questions, I don't want to take up this panel's time with the en banc issue. I thank the court for its time. All right. Thank you, counsel. Do you have anything to add? I really don't, except for one small point, Judge Cook, and that is the opposing counsel said that the presumption of arbitrability falls away in this context. It does not. That's exactly the opposite of what the Supreme Court said in Litton, which is there is a presumption of arbitrability for post-termination disputes that relate to events under the contract. Okay. Thank you, Your Honors. Thank you. Thank you both. We'll consider your case carefully.